IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ALEJANDRO URQUIZA, )
)
        Petitioner, )
)
v. )   Case No. 16-CV-237-TCK-JFJ
)
JOE ALLBAUGH, )
)
        Respondent. )

## OPINION AND ORDER

Before the Court is Petitioner Ajejandro Urquiza's habeas corpus petition under 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his Tulsa County District Court convictions for possessing and distributing cocaine, Case No. CF-2011-893. Dkt. 1 at 1. For the reasons below, the Court will deny the petition.

## I. Background

Petitioner's convictions stem from a narcotics investigation in 2011. Dkt. 12-7 at 151. Narcotics officers were conducting surveillance when they observed a relative, Moises Bustos, emerge from Petitioner's Tulsa residence and drive away. *Id.* at 152; *see also* Dkt. 12-8 at 8-9. A nearby patrol unit stopped Bustos, who consented to a search of his vehicle. Dkt. 12-7 at 154, 169-170. The patrol officers discovered a kilo of cocaine in the trunk. *Id.* at 171-172. Narcotics officers then searched Petitioner's apartment, where they found more cocaine and digital scales in his bedroom. Dkt. 12-8 at 45. Sergeants Wolthuis and Uhren visited Petitioner's workplace and questioned him about the cocaine. *Id.* at 20; *see also* Dkt. 12-7 at 232-239. According to Wolthuis and Uhren, Petitioner admitted he owned the cocaine in Bustos' trunk. *Id.* Petitioner disagrees.

The State charged Petitioner with: (Count I) trafficking in illegal drugs, OKLA. STAT. tit. 63, § 2-415; (Count II) possession of a controlled dangerous substance without tax stamp affixed,

OKLA. STAT. tit. 63, § 450.1; (Count III) unlawful possession of drug paraphernalia, OKLA. STAT. tit. 63, § 2-405; (Count V) unlawful possession of a controlled drug, OKLA. STAT. tit. 63, § 2-402. Dkt. 11-3 at 1.[1] Petitioner retained Brian Martin as defense counsel. Dkt. 3 at 3. A jury trial commenced on June 12, 2012. Dkt. 12-5. However, the state court declared a mistrial after a prosecutor questioned Petitioner regarding a prior felony conviction. Dkt. 12-6 at 165. The state court held a second trial, and on November 29, 2012, the jury convicted Petitioner of all charges. Dkt. 12-8 at 104-105. In accordance with the jury's recommendation, the state court sentenced Petitioner to a total term of 48 years imprisonment. Dkt. 11-3 at 1.

Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"). Dkt. 11-1. His appellate counsel (Lisbeth McCarty) raised eleven propositions of error. *Id.* at 2-3. The following propositions are relevant here:

(Proposition I): Petitioner's confession was involuntary;

(Proposition V): Double jeopardy violations;

(Proposition VI): Insufficient evidence; and

(Proposition VII): Prosecutorial misconduct.

By a Summary Opinion entered January 10, 2014, the OCCA affirmed Petitioner's conviction and sentence. Dkt. 11-3.

Thereafter, Petitioner, through his current counsel (Stanley Monroe), filed an application for post-conviction relief in the state court. Dkt. 11-4. He argued trial counsel rendered ineffective assistance due to personal problems and made other errors both before and during trial. *Id.* at 3-5. The post-conviction application also cited additional instances of prosecutorial misconduct that

---

[1] Count IV (speeding) was only charged to Bustos. Dkt. 11-3 at 1.

were not raised on appeal. *Id.* at 6-8. The state court denied Petitioner's application - based in part on a procedural bar - and the OCCA affirmed. Dkt. 11-6; *see also* Dkt. 11-7.

Petitioner, through counsel, filed the instant § 2254 Petition (Dkt. 1) along with a supporting brief (Dkt. 3) on April 28, 2016. The § 2254 Petition identifies the following grounds for relief:

(Ground 1): Ineffective assistance of trial counsel;

(Ground 2): Prosecutorial misconduct;

(Ground 3): Involuntary confession;

(Ground 4): Double jeopardy; and

(Ground 5): Insufficient evidence.

Dkt. 1 at 5-17.

On June 23, 2016, Respondent filed a Response (Dkt. 11) along with copies of the state court record (Dkt. 12). Respondent concedes, and the Court finds, that Petitioner timely filed his federal habeas petition. *See* 28 U.S.C. § 2244(d)(1). However, Respondent contends certain portions of Grounds 1 and 2 are procedurally barred, and the remaining claims lack merit. Dkt. 11 at 2. Petitioner filed a Reply (Dkt. 16) on August 11, 2016, and the matter is fully briefed.

**II. Exhaustion and Procedural Default**

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's habeas claims. *See* 28 U.S.C. § 2254. Relief is only available under the AEDPA where the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "Before addressing the merits of [a habeas] claim, [the petitioner] must show that he can satisfy [certain] procedural requirements" including the exhaustion of state remedies. *U.S. v. Greer*, 881 F.3d 1241, 1245 (10th Cir. 2018); *see also* 28 U.S.C. § 2254(b)(1)(A).

3

"The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir. 1994).

A corollary to the exhaustion requirement is the procedural bar doctrine. *See Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). If the state court denied a habeas claim "based on an adequate and independent state procedural rule," the claim is procedurally defaulted for purposes of federal habeas review. *Davila,* 137 S. Ct. at 2064. A state procedural rule "is independent if it is separate and distinct from federal law," and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)). "Once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden to place that defense in issue shifts to the petitioner." *Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999). "To satisfy this burden, petitioner is, at a minimum, required to set forth specific factual allegations as to the inadequacy of the state procedure." *Smallwood v. Gibson*, 191 F.3d 1257, 1268 (10th Cir. 1999).

Federal courts also lack authority to review claims that are not exhausted (and not yet defaulted), but would be procedurally barred if petitioner returned to state court. *See Anderson v. Sirmons,* 476 F.3d 1131, 1139 (10th Cir. 2007); *Grant v. Royal*, 886 F.3d 874, 891-92 (10th Cir. 2018). This doctrine is called "anticipatory bar." *Id.* To determine its applicability, the Court must consider whether exhaustion would be futile, and the state court would refuse to consider the merits of the federal claim, based on an adequate and independent state procedural rule. *See Anderson,* 476 F.3d at 1139. If a procedural bar or an anticipatory bar applies, a federal court will not review the claim unless the petitioner can show "cause for the default and actual prejudice as a result of

4

the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result from dismissal of the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A. Grounds 1 and Portions of Ground 2 are Procedurally Defaulted

Ground 1 (ineffective assistance of counsel) and Ground 2 (prosecutorial misconduct) each contain various subparts. In Ground 1, Petitioner alleges trial counsel:

(Ground 1(a)): Suffered from personal issues, attended trial with a black eye, sometimes smelled like alcohol, and used his cell phone during court appearances.[2]

(Ground 1(b)): Failed to use an interpreter during all visits to Petitioner;

(Ground 1(c)): Failed to request a *Jackson v. Denno* hearing on the voluntariness of Petitioner's confession;

(Ground 1(d)): Failed to call witness Terry Hazelrigg, who would testify about Petitioner's language barrier; and

(Ground 1(e)): Failed to request information regarding Sergeant Wolthius' credibility.

In Ground 2, Petitioner alleges the prosecution:

(Ground 2(a)): Invaded the province of the jury by forcing Petitioner to comment on the truthfulness of other witnesses;

(Ground 2(b)): Vouched for Sergeant Uhren in closing argument;

(Ground 2(c)): Failed to call a state witness who would allegedly testify that Petitioner spoke limited English; and

(Ground 2(d)): Failed to advise defense counsel that Sergeant Wolthius was investigated in the Tulsa police corruption probe of 2012.

That parties agree that Grounds 2(a) (invading the jury's province) and 2(b) (improper vouching) were properly exhausted. However, Petitioner did not raise any portion of Ground 1 or

---

[2] Respondent contends the allegations about the black eye, alcohol issues, and cell phone use constitute a separate claim. Dkt. 11 at 6. Petitioner contends the allegations serve as additional facts to demonstrate that counsel was suffering from personal issues. Dkt. 16 at 2. The Court agrees with Petitioner and will analyze the allegations as part of Ground 1(a).

Grounds 2(c) and (d) on direct appeal. Therefore, the State Court and the OCCA declined to address those claims during the post-conviction proceedings based on OKLA. STAT. tit. 22, § 1086. Dkt. 11-5 at 7; Dkt. 11-7 at 1-2. Section 1086 bars claims not raised on direct appeal unless the petitioner demonstrates a "sufficient reason" for the earlier omission. OKLA. STAT. tit. 22, § 1086. The rule is independent, as it relies purely on state law. *See Smallwood v. Gibson,* 191 F.3d 1257, 1268 (10th Cir. 1999). The Tenth Circuit has also "repeatedly found that Oklahoma has applied section 1086 consistently to preclude claims on post-conviction review which could have been raised on direct appeal." *Hale v. Gibson*, 227 F.3d 1298, 1330 n. 15 (10th Cir. 2000) (collecting cases). Indeed, Oklahoma has applied the Section 1086 bar in cases involving ineffective assistance of trial counsel and prosecutorial misconduct. *See Logan v. State,* 293 P.3d 969, 973 (Okla. Crim. 2013); *Woodruff v. State,* 910 P.2d 348, 351 (Okla. Crim. 1996). The State Court and the OCCA therefore denied Ground 1, Ground 2(c), and Ground 2(d), based on an adequate and independent state procedural rule.

The Court notes the result would not differ based on the special attention given to ineffective assistance of counsel claims. Courts "view state procedural rules that bar ineffective assistance claims with a healthy degree of skepticism," but "this does not preclude a finding that a state procedural rule is adequate to bar federal review of" such a claim. *Smallwood*, 191 F.3d at 1268. Oklahoma's procedural bar can be applied to ineffective assistance claims where: (1) the petitioner consulted with separate counsel on appeal; and (2) the claim can either be adjudicated based on the current record, or the petitioner could have requested a limited evidentiary remand to develop the facts under OCCA Rule 3.11. *See English v. Cody,* 146 F.3d 1257, 1263-4 (10th Cir. 1998); *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014) (concluding ineffective assistance

6

of trial counsel claim was procedurally barred where petitioner could have requested a limited remand under Rule 3.11 to develop the facts on direct appeal); *DeLozier v. Sirmons*, 531 F.3d 1306, 1330 (10th Cir. 2008) (same).

Both requirements are met in this case. Petitioner had separate counsel on appeal. Many facts supporting his claim (*i.e.* the absence of discovery requests, the failure to request a *Jackson v, Denno* hearing, and the absence of testimony regarding the language barrier) would be apparent from the original record. The remaining claims (personal problems/emotional distress and the failure to use an interpreter during private meetings) cannot be resolved on the record alone. However, Petitioner has not sufficiently demonstrated why OCCA Rule 3.11 would have been inadequate. He points to a Tenth Circuit case noting "Oklahoma rarely, if ever, remands cases for a [Rule 3.11] hearing." *Fairchild v. Workman*, 579 F.3d 1134, 1142 (10th Cir. 2009). Such statement does not have any nexus to the instant case or negate various other binding cases upholding the procedural bar in light of Rule 3.11. *See Cole*, 755 F.3d at 1159; *DeLozier*, 531 F.3d at 1330; *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 905 (10th Cir. 2019) (citing Rule 3.11 as an avenue to supplement the record on appeal, and noting petitioner failed to provide "specific allegations suggesting that Oklahoma's system was working unfairly").

Petitioner also contends Rule 3.11 would be inadequate in this case because he did not discover trial counsel suffered from emotional distress until well after the trial. At some point in 2014, Petitioner discovered trial counsel filed a civil "infidelity" claim against his former girlfriend on July 30, 2013. Trial counsel alleged his former girlfriend's infidelity caused "severe emotion distress, continued loss of sleep, and inability to perform job as once before because of a nervous condition." Dkt. 3-1 at 5. However, such statement does not demonstrate trial counsel was

7

impaired during the time he represented Petitioner. The trial concluded in November 2012, about seven months before trial counsel discovered the alleged affair on June 27, 2013. Dkt. 3-1 at 3; Dkt. 12-8. Further, to the extent trial counsel suffered from emotional issues more generally, Petitioner could have requested an investigation by appellate counsel. Trial counsel allegedly appeared in court with a black eye and smelling like alcohol, which were serious red flags known to Petitioner during trial. The fact that Petitioner declined to raise his concerns until the instant habeas proceeding does not demonstrate Rule 3.11 is inadequate.

For these reasons, Ground 1, Ground 2(c) (prosecutor's failure to call a state witness), and Ground 2(d) (prosecutor's failure to turn over impeachment materials) are procedurally barred. Habeas review is precluded on those claims unless Petitioner can overcome the default.

B. Petitioner Cannot Overcome the Default

The Court cannot reach the merits of Grounds 1, 2(c), or 2(d) unless Petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that a "fundamental miscarriage of justice" will result from dismissal of the claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The cause standard requires a petitioner to "show that some objective factor external to the defense impeded ... efforts to comply with the State's procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Factors supporting "cause" include previously unavailable evidence, a change in the law, and interference by state officials. *Id.* The alternative to establishing "cause and prejudice" is proof of a "fundamental miscarriage of justice," which requires the petitioner to demonstrate he is "actually innocent." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

To overcome the default of Ground 1, Petitioner again argues the civil "infidelity" suit constitutes new evidence unavailable at the time of appeal. Dkt. 16 at 8-12. As discussed above, the suit demonstrates trial counsel suffered from emotional distress seven months after the attorney-client relationship ended, and Petitioner knew about the other red flags at trial. Further, even if the civil suit was relevant, the complaint was available before briefing was complete on direct appeal. *Compare* Dkt. 3-1 *with* Dkt. 11-1 and 11-2. Consequently, the default of Petitioner's ineffective assistance of counsel claims (Ground 1) cannot be overcome by newly discovered evidence, cause, or a fundamental miscarriage of justice.

With respect to Grounds 2(c) and 2(d), Petitioner appears to argue cause exists based on the very nature of the claims. He contends the prosecution improperly withheld exculpatory testimony by Terry Hazelrigg regarding the language barrier (Ground 2(c)) and information about the investigation of Sergeant Wolthius (Ground 2(d)). Petitioner has not explained how he eventually discovered those issues, or how any external factors prevented him from investigating on direct appeal, as he did in anticipation of the post-conviction application. It appears the later investigation is at least partially attributable to the change in counsel between the appeal and post-conviction proceeding. *Compare* Dkt. 11-1 *with* Dkt. 11-4. However, obtaining new counsel, who conducts a new investigation, does not constitute cause unless appellate counsel was ineffective. *See Cuesta-Rodriguez v. Carpenter,* 916 F.3d 885, 902 (10th Cir. 2019) (explaining in detail when mistakes by counsel can constitute "cause" to overcome a procedural default). Petitioner has therefore not overcome the procedural default, and habeas review is unavailable with respect to Grounds 1, 2(c), and 2(d).

## III. Merits Analysis

Respondent concedes, and the Court finds, that Petitioner exhausted state remedies with respect to the remaining claims in the Petition. The Court will therefore consider whether Petitioner's conviction violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Because the OCCA already adjudicated Petitioner's claims, this Court may not grant habeas relief unless he demonstrates the OCCA's ruling: (1) "resulted in a decision that was contrary to . . . clearly established Federal law as determined by Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);[3] (2) "resulted in a decision that . . . involved an unreasonable application of clearly established Federal law," *id.*; or (3) "resulted in a decision that was based on an unreasonable determination of the facts" in light of the record presented to the state court, *id.* at § 2254(d)(2).

"To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011) (alterations in original) (quotations omitted). When the state court's decision "identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case." *Id.* (quotations omitted). Significantly, an "unreasonable application of" clearly established federal

---

[3] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) (explaining that "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings").

law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quotations omitted). "[E]ven clear error will not suffice." *Id.* Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Court must presume the correctness of the OCCA's factual findings unless petitioner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Essentially, the standards set forth in § 2254 are designed to be "difficult to meet," *Harrington v. Richter,* 562 U.S. 86, 102 (2011), and require federal habeas courts to give state court decisions the "benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). A state prisoner ultimately "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### B. An Evidentiary Hearing is Not Warranted

As an initial matter, Petitioner asks the Court to conduct on evidentiary hearing before ruling on the merits. Dkt. 3 at 11. A district court is not required to hold an evidentiary hearing where, as here, "the state-court record precludes habeas relief under the limitations of § 2254(d)." *See Cullen v. Pinholster*, 563 U.S. 170, 183 (2011). Moreover, it is unclear what favorable testimony or evidence Petitioner would offer at a hearing. *See United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004) ("District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."). The hearing request is therefore denied.

B. Grounds (2)(a) and 2(b): Prosecutorial Misconduct

In Grounds 2(a) and 2(b), Petitioner contends the prosecutor's remarks deprived him of a fair trial. Ground 2(a) focuses on an exchange about the veracity of other witnesses. Dkt. 3 at 6. After Petitioner testified that he never claimed ownership of the cocaine in Bustos' trunk during the police interview, the prosecutor asked: "So [Sergeants Uhren and Wolthius are] liars?" Dkt. 11-1 at 43-44. The prosecutor went on to confirm Petitioner's testimony that each officer lied under oath, and then asked: "So now we have two police officers saying the same thing and telling the same lie; correct?" *Id.* Ground 2(b) raises a related claim. After Petitioner testified that the officers were lying, trial counsel remarked in closing argument that the officers "could have perceived the experience differently" than Petitioner, and went on to cite facts that made their version of events less likely. Dkt. 12-8 at 88. In response, the prosecutor argued: "Did Sergeant Glenn Uhren, with 20-plus years of experience on the Tulsa Police Department, with a long career on the line, take that stand and lie to you?" *Id.* at 100.

Petitioner contends the prosecutor improperly forced Petitioner to comment on the veracity of the officers and vouched for Officer Uhren. Dkt. 3 at 6. The OCCA considered and rejected these arguments, finding "prosecutorial misconduct did not deprive [Petitioner] of his right to a fair trial." Dkt. 11-3 at 4. The OCCA explained "the comments at issue were proper as they fell within the broad parameters of effective advocacy and do not constitute plain error." *Id.*

Having reviewed the record, the Court agrees. "[I]nappropriate prosecutorial comments, standing alone," are not sufficient to vacate "a criminal conviction obtained in an otherwise fair proceeding.'" *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "The errant remarks must have so infected the trial with

12

unfairness as to make the resulting conviction a denial of due process." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885 (10th Cir. 2019) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To determine whether the challenged remarks deprived the petitioner of a fair trial, courts must consider "all the surrounding circumstances, including the strength of the state's case" and any cautionary instructions to the jury. *Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006).

The Tenth Circuit has declined to find plain error where a prosecutor cross-examined the defendant about whether police officers were lying. *See United States v. Williamson,* 53 F.3d 1500, 1521-1522 (10th Cir. 1995). The questioning in *Williamson* was very similar to the case at hand; the prosecutor asked the defendant whether an undercover narcotics officer was lying about selling drugs to the defendant. *Id.* at 1521 n.13. The Tenth Circuit concluded that while the questioning was aggressive, it was not "starkly offensive" or sufficient to overturn the conviction. *Id.* at 1522. Under this precedent, the prosecutor did not deprive Petitioner of a fair trial by asking questions about whether Sergeants Uhren and Wolthius were lying.

Similarly, the Tenth Circuit has found that improper vouching occurs "only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Magallanez*, 408 F.3d 672, 680 (10th Cir. 2005). The Court is not convinced the prosecutor indicated any personal beliefs regarding Sergeant Uhren's credibility. The remarks appear to be based on the evidence, and in response to closing argument by trial counsel. Therefore, the OCCA reasonably concluded Petitioner received a fair trial, and Grounds 2(a) and 2(b) fail.

C. Ground (3): Involuntary Confession

In Ground 3, Petitioner argues his statements to Sergeants Uhren and Wolthius were not voluntary. Dkt. 3 at 8. According to Petitioner, he did not intend to claim ownership of the cocaine in Bustos' trunk. *Id.* He asserts he only understands basic English phrases and did not have the benefit of an interpreter. *Id.* Petitioner also points out that the officers did not inform him of his right to contact the Mexican Consulate, as required by the Vienna Convention. *Id.* The OCCA rejected Ground 3, finding Petitioner's "statement was made knowingly and intelligently." Dkt. 11-3 at 2. The OCCA further noted Petitioner "suffered no prejudice by the State's failure to inform him of his right to contact the Mexican Consulate pursuant to the Vienna Convention." *Id.*

Petitioner's allegations implicate the Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process. *See Dickerson v. United States*, 530 U.S. 428, 433 (2000). The admissibility of a statement made during a custodial interrogation turns on: (1) whether law enforcement officers gave required warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) whether, under the totality of the circumstances, the statement was voluntary. *See Dickerson*, 530 U.S. at 444. Although the failure to inform a nonresident defendant of his rights under the Vienna Connection will not justify the suppression of evidence, it can be considered as "part of a broader challenge to the voluntariness of his statements to police." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350 (2006).

Having reviewed the record, the Court agrees Petitioner's statements were knowing and voluntary. Sergeants Wolthuis and Uhren both testified that Wolthuis issued a *Miranda* warning before asking any material questions. Dkt. 12-7 at 238-240; *see also* Dkt. 12-8 at 15-18. According to the officers, Wolthius confirmed Petitioner understood each line of the *Miranda* warning and

14

that Petitioner spoke in proper conversational English. *Id.* Petitioner was familiar with the process of a police investigation, as he previously pled guilty to a felony conviction in 2009. Petitioner has not presented any concrete evidence, aside from his own testimony,[4] that he did not understand the warning, nor has he demonstrated the result would be different had he been advised of his rights under the Vienna Convention. *See Valdez v. Ward,* 219 F.3d 1222, 1231 (10th Cir. 2000) (Although voluntariness is a legal question, the state court's determination that defendant "understood his *Miranda* rights is a question of fact" that can only be overcome by clear and convincing evidence).

On this record, the Court cannot say the OCCA's ruling constitutes an "extreme malfunction in the justice system." Habeas relief is therefore unavailable on Ground 3.

### D. Ground (4): Double Jeopardy

In Ground 4, Petitioner argues the prosecution goaded the defense into seeking a mistrial by asking about his prior felony conviction. Dkt. 3 at 9-10. Petitioner therefore argues the second trial violated the Double Jeopardy Clause. *Id.*

Ordinarily, if the defendant moves for a mistrial, there is no barrier to a second trial under the Double Jeopardy Clause. *See Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir.1996); *Oregon v. Kennedy*, 456 U.S. 667, (1982). There is one "exception to this principle: when a defendant's motion for mistrial is the result of judicial or prosecutorial impropriety that was intended to provoke the defendant into filing the motion, there has been no consent and the Double Jeopardy Clause bars retrial." *Earnest*, 87 F.3d at 1128. Misconduct which prompts the defendant to move for a

---

[4] Petitioner also points out inconsistencies in the testimony of Sergeants Wolthius and Uhren during the first and second trial. Dkt. 16 at 19. The mere existence of conflicting testimony is not clear and convincing evidence that overcomes the presumption of correctness. In any event, the Court carefully reviewed the testimony from both trials and determined any inconsistencies are not material enough to disregard the statements of those officers.

15

mistrial will bar retrial "only where the ... conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). In other words, the conduct must be intentional, not simply improper. *Id.* The petitioner "bears the burden of demonstrating that the [prosecutor] acted with the requisite intent, which is 'an extremely exacting standard.'" *Housley v. Fatkin*, 148 Fed. App'x 739, 743 (10th Cir. 2005) (quoting *Earnest*, 87 F.3d at 1130).

Citing *Oregon v. Kennedy,* the OCCA found that the prosecutor did not goad defense counsel into requesting a mistrial. Dkt. 11-3 at 4. This is consistent with the record, which reflects Andrea Brown asked Petitioner about his prior felony conviction in violation of the state court's earlier ruling. Dkt. 12-6 at 159-161. However, Brown was not involved in the conversation that led to the ruling. *Id.* The state court noted: "We had a discussion [regarding the prior felony] off the record between counsel for the defense and [another prosecutor]. At least as far as I was concerned, both [parties] understood that. But in fairness Ms. Brown was not involved in that conversation …" *Id.* at 161-162. The trial court found an admonition to the jury would be insufficient to cure the problem and declared a mistrial. *Id.* at 162. On this record, the OCCA's ruling regarding prosecutorial goading is therefore reasonable, and Ground 4 fails.

### E. Ground (5): Sufficiency of the Evidence

In Ground 5, Petitioner claims he was deprived of due process because the State's evidence is insufficient to support a drug trafficking conviction. Dkt. 3 at 10. The trafficking charge is traceable to the kilo of cocaine recovered from Bustos' trunk. *Id.* Petitioner argues the only evidence that he owned the cocaine is the self-serving evidence by Bustos, an accomplice, and the allegedly unreliable testimony by Sergeants Wolthius and Uhren. *Id.* The OCCA disagreed,

16

finding "the accomplice testimony was properly corroborated, and the evidence presented at trial was sufficient to prove that [Petitioner] committed the crime of trafficking in cocaine beyond a reasonable doubt." Dkt. 11-3 at 4.

Under the Due Process Clause of the Fourteenth Amendment, a criminal defendant cannot be convicted of a crime unless the state proves, beyond a reasonable doubt, every essential element of the crime charged. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). As the Supreme Court explained:

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* The Court looks to state law to determine the substantive elements of the crime, "but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 566 U.S. at 655.

Petitioner challenges his drug trafficking conviction under OKLA. STAT. tit. 63, § 2-415. To obtain this conviction, the State had to show Petitioner: (i) knowingly; (ii) possessed; (iii) 28 grams

17

or more of cocaine. *See* OKLA. CRIM. JURY INSTRUCTION NO. 6-13; OKLA. STAT. tit. 63, § 2-415. The State presented three witnesses (Bustos, Wolthius, and Uhren) who all stated Petitioner knowingly possessed the kilo of cocaine recovered from Bustos' trunk. Bustos stated Petitioner was like a brother to him. Dkt. 12-7 at 116. On March 8, 2011 - the day of the narcotics raid – Bustos went to Petitioner's apartment to watch a soccer game. *Id.* at 117. Before the men left the apartment, Petitioner reportedly gave Bustos a plastic bag containing the cocaine and asked him to hide it. *Id.* at 121-122. Bustos placed the bag in his trunk and drove away, but officers stopped him a few minutes later and discovered the cocaine. *Id.* at 122-126. Sergeants Wolthius and Uhren also testified that Petitioner admitted he owned the cocaine found in Bustos' trunk. Dkt. 12-7 at 239; Dkt. 12-8 at 21. They recalled Petitioner saying he got the cocaine from Mexico, and that he usually sells a kilo for $23,000 - $25,000. *Id.*

Petitioner contends Bustos' statements constitute uncorroborated accomplice testimony, which deprived him a fair trial. It is well established that accomplice testimony need not be corroborated under federal law, and the absence of corroborating evidence does not constitute a constitutional violation. *See Cummings v. Sirmons,* 506 F.3d 1211, 1237 (10th Cir. 2007). In any event, Bustos' testimony was corroborated by Sergeants Wolthius and Uhren. Although Petitioner disagrees with their testimony, habeas courts "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any … conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quotations omitted). The Court therefore finds the OCCA reasonably applied the facts and federal law, and habeas relief is unavailable with respect to Ground 5.

Having determined Petitioner's conviction does not violate federal law, the Petition must be denied. *See* 28 U.S.C. § 2254(a).

## IV. Certificate of Appealability

Habeas Corpus Rule 11 requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may only issue "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. 2) is **denied**.
3. A certificate of appealability is **denied**.
4. A separate judgment will be entered herewith.

ORDERED this 17th day of June 2019.

_____
TERENCE C. KERN
UNITED STATES DISTRICT JUDGE